Ontario Devon Williams v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-318-CR

     ONTARIO DEVON WILLIAMS,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 66th District Court
Hill County, Texas
Trial Court # 30,844
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Ontario Devon Williams was charged with aggravated robbery. The victim was an 81 year
old woman. Williams was fifteen years old at the time of the offense. After a jury trial, Williams
was found guilty. At the punishment hearing, the State introduced testimony that Williams had
been previously adjudicated as a juvenile for aggravated assault. The jury sentenced him to five
years in prison. Williams appeals his conviction. We affirm.

Jurisdiction
      We initially address Williams’s seventh issue. He argues that the trial court had no
jurisdiction to try his case because he was fifteen at the time he committed the offense and the
record contained no order certifying him to stand trial as an adult and transferring juvenile
jurisdiction to the District Court. 
      When a child is at least 14 years old and has committed a first degree felony such as
aggravated robbery, the juvenile court may waive its exclusive original jurisdiction and transfer
the child to the appropriate district court or criminal district court for criminal proceedings. Tex.
Fam. Code Ann. § 54.02(a)(2) (Vernon Supp. 2001); Tex. Pen. Code Ann. § 29.03(b) (Vernon
1994). If the juvenile court waives its jurisdiction, the court “shall state specifically in the order
its reasons for waiver and certify its action, including the written order and findings of the court,
and shall transfer the person to the appropriate court for criminal proceedings . . . .” Tex. Fam.
Code Ann. § 54.02(h) (Vernon Supp. 2001).
      Williams contends that to assert jurisdiction, an order from the juvenile court waiving
jurisdiction must be in the record at the subsequent criminal proceeding. At the time Williams
submitted his brief to this court, no such order was in the record. After he filed his brief, the
district clerk supplemented the record to include the order of the juvenile court waiving
jurisdiction and transferring the cause to a criminal district court.


 Williams’s complaint was
rendered meritless by this inclusion. His seventh issue is overruled.
Challenge for Cause
      In his first six issues, Williams contends that the trial court erred in refusing to grant his
challenges for cause on six members of the venire. Counsel for Williams asked the panel if
anyone would not be able to consider probation in an aggravated robbery case. Seven generally
responded that they would not be able to consider probation. Williams challenged each of these
veniremembers for cause. One challenge was granted, the other six were denied.
      The Court of Criminal Appeals has recently held that to demonstrate harm for the erroneous
denial of a challenge for cause, the record must show the following steps:
      1.   a peremptory challenge was used on the complained-of veniremember,
2.all peremptory challenges were exhausted, 
3.a request for additional strikes was made and denied, and 
4.an objectionable juror sat on the jury. 
Johnson v. State, No. 1353-99, slip op. at 10 (Tex. Crim. App. March 28, 2001).
       Williams did not request any additional peremptory strikes. Thus, even if the trial court erred
in denying the challenges for cause to the six veniremembers, Williams has not demonstrated any
harm. Issues one through six are overruled.
Factual Sufficiency
      In his last issue, Williams argues that the evidence was factually insufficient to support the
verdict. Specifically, Williams contests his identification as the perpetrator of the crime.
      Law
      When conducting a review of the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997). We then apply the standard of review set out by the Court of Criminal
Appeals in Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000). We ask “whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the [fact finder’s] determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.” Id. at 11;
see also Cain v. State, 958 S.W.2d 404 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126
(Tex. Crim. App. 1996). In other words, evidence can be factually insufficient if: (1) it is so
weak as to be clearly wrong and manifestly unjust, or (2) the adverse finding is against the great
weight and preponderance of the available evidence. Johnson, 23 S.W.3d at 11. The jury is the
judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." 
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
      Facts
      On March 1, 1996, at about 10 o’clock in the morning, Rebecca Helmick was visiting a “shut-in” from her church who lived at an apartment complex in Hillsboro, Texas. As she entered her
car after the visit, she noticed a young man walk by. She described him as a “neat, light-complected boy” who wore “blue jeans and gray T-shirt, [and] a little toboggan rolled up on top
of his head.” Helmick shut her door, and as she began to start her car, her door opened. She
looked up and saw the same young man standing by her. He demanded her purse. Acting on her
first impulse, she refused. The young man then hit her across her face with a stick he had been
carrying. The force of the blow broke Helmick’s glasses across the bridge and caused her nose
to bleed. The State introduced photographs which also showed a large knot on her forehead, in
between her eyes. Helmick was 81 years old at the time of the attack and 84 years old at the time
of the trial.
      After the attack, she drove to the police station within the same block as where the attack took
place. She gave a statement about what had happened and told the police she could identify her
assailant. She was then sent by ambulance to the hospital. A next door neighbor, Jason Williams,
worked at the hospital and either took Helmick home or made arrangements to have her taken
home.
      Jason learned from the police department that Helmick would be needed back at the station
to identify her assailant. He brought her in, and she viewed the suspect by looking through a
window into another room. She identified him as her attacker. Helmick and Jason were then
instructed to sit down while the suspect would be walked by her. She identified him again as her
attacker. After leaving the police department, Jason drove Helmick back to the apartment complex
where the attack had occurred to try to locate one lens of her glasses. Jason and Helmick spotted
her attacker sitting on a front porch of a house. Helmick identified him again.
      On cross-examination, Helmick was presented with three photographs and asked if she
recognized any of them. She thought that one of them might have been her attacker. It was later
established that the person in the picture was a young man named Chris Stephenson, and that
Williams had been mistaken before for Stephenson. It was also established that Stephenson was
approximately six feet tall, several years older than Williams, and at the time of the incident, had
hair much longer than Williams. The State offered a photograph of Stephenson to show his
appearance at the time of the offense. Helmick stated that her attacker was about five feet, seven
inches tall with short, almost no hair. Sarah Betts, Williams’s mother, confirmed that Williams
stood about five feet, seven inches tall, and had a “college cut” which was shorter than
Stephenson’s hair.
      Cruz Gonzales, an investigator with the Hillsboro Police Department, investigated the case
involving Helmick. He had Williams come to the police department. The person Helmick
identified at the police station was Williams. Helmick identified Williams in court as the young
man who attacked her. A latent print was lifted from above the door handle of Helmick’s car. 
It matched Williams’s left thumb.
      Betts and her friend, Jesse Dominguez, testified that Williams and his cousin, Rodney, were
asleep either in their room upstairs or downstairs in the livingroom. Betts woke up Williams at
about noon before she and Dominguez went to lunch. Williams was not at school because he had
been expelled. He did not have a job at that time either. Rodney confirmed that he and Williams
usually slept until noon and that on March 1st, they probably woke up around noon. A next door
neighbor verified that Williams liked to sleep late and sometimes woke him up in the afternoons
for Betts.
      Application
      After a neutral review of all the evidence, we cannot say that the evidence is so weak as to
be clearly wrong and manifestly unjust or that the proof of guilt was greatly outweighed by
contrary proof. Williams’s eighth issue is overruled.
Conclusion
       Having overruled all issues presented, we affirm the judgment of the trial court.
 
                                                                         TOM GRAY
                                                                         Justice
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed April 11, 2001
Do not publish